[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a limited contested action seeking a dissolution of marriage and other equitable relief. After trial, the Court finds the fair preponderance of the evidence supports the following finding of facts.
1. The parties, who were married on August 17, 1985 at White Plains, New York, were residents of Connecticut for more than one year prior to the institution of the action and the plaintiff remains domiciled here.
2. There are two minor children issue of the marriage: Tiffany, born March 21, 1987; and Jessica, born March 31, 1988. No other minor children have been born to the plaintiff since the date of marriage and she is not pregnant.
3. Neither party is or has been a recipient of public assistance for maintenance or support.
4. These parties met in 1981 in Westchester County, New York. Plaintiff, who is thirty (30) years of age, is a trained design mechanical draftsman. Defendant, who is thirty-four (34) years of age, is a union electrician. In 1985, they moved to Connecticut. Then in 1986, they purchased in joint names a condominium unit on Town Hill Avenue in Danbury. In 1987, they jointly purchased a single family home on Michaud Road in Danbury. These properties are still owned by the parties. Most of the money for the down payments and closings came from a net $116,000.00 negligence suit recovery by the plaintiff resulting from an accident she was in prior to marriage. Plaintiff also used the money to furnish both residences and to purchase a car each plus a truck for her husband. The Court finds the fair market values of the Michaud Road home to be $170,000.00 gross and the Town Hill condominium to be $100,000.00 gross.
While all those funds have been spent on the mutual welfare of the family, the outstanding loans in connection with those purchases, as well as for repairs to the single home, remain outstanding.
In fact, there is a judgment lien against the house in favor of Danbury Hospital for the birth of Jessica in the face amount of $1,026.00. Plaintiff's medical insurance had paid most of the bills incurred for both pregnancies. CT Page 6294 Defendant has argued that because of bad economic times, he could not pay this. Yet he was earning by his own words at least $40,000.00 a year right through 1989. In 1990, he stated he worked on union jobs only nine months. In 1991, he claims to have worked only nine weeks and that he has been solely on unemployment since September, 1991. Plaintiff's 1991 earnings are $37,949.00.
While living together, both can be called extremely hard workers. Not only did defendant work his union jobs, he also did side jobs.
Eventually with the children's needs growing, plaintiff asked defendant to do less night side work so he could spend more time with the girls and herself. Instead of doing that, defendant became involved with a new church in New York City in the summer of 1989, called New York City Church of Christ. He now attends a zone group in Westchester for the mid-week activities.
Prior thereto, both parties had attended Baptist and similar Protestant denomination churches together. To please her husband, plaintiff accompanied defendant to the church services which were held in a large theater. Each new member was given a disciple. Not only was the person expected to tell all about his or her private life, including finances, to this disciple, the new member was expected to follow that stranger's instructions as well as to attend bible classes at night in another person's home and also attend a mid-week evening service. The disciple called once each and every day.
This church demands complete control of the members' lives. Defendant was contributing $35.00 a week to the church while letting other bills go unpaid.
His wife objected to the inordinate amount of time the church was taking from his life away from the family as well as the church's attempt to control her mind and activities in the home.
Defendant fails to recognize that this church is the cause of the breakdown of this marriage. He testified it is more important to find out about God than to stay home with children. Yet on the other hand, he also testified that if he had to work late in the evening of the mid-week services, he would work. Thus, the Court concludes that defendant places his children in a very low position of importance in his life. CT Page 6295
However, it is also only fair to say that in most areas regarding the resolution of this case, the parties have tried to be very reasonable and cooperative. The Court hopes this attitude will spill over into good actions by both parents with reference to the minor children whose well-being, physically, intellectually and emotionally, must be a paramount goal for both.
The Court finds the marriage has irretrievably broken down because of the nature of the church the defendant espouses.
This action was begun in April, 1990, and defendant moved to his mother's home in Westchester in October, 1990. Defendant has three years of college opposed to his wife's one year post high school training. He was always a good earner and would obtain extra work until this divorce action was initiated. Now he claims there is no work at all and he may not work for anybody other than his local New York union. The Court believes there is a certain amount of foot dragging here. He also has experience in carpentry and painting. Defendant has always earned more than plaintiff and will be able to do so in the future. Both parties are in good health.
It is agreed that plaintiff is to have custody of the minor girls which means a substantial day care expense as neither child is in school full-time yet. This is important when all the other debts are taken into account.
Having in mind all the evidence, the status of the parties, and all relevant statutory criteria, the Court orders:
A. The marriage is dissolved.
B. Custody of the two minor children, Tiffany and Jessica, is awarded to the plaintiff subject to reasonable, liberal and flexible visitation in the defendant as follows: Alternate weekends from Friday at 5:00 p.m. until Sunday morning at 10:00 a.m. and Thursday afternoons from 5:00 p.m. until 7:30 p.m. The defendant shall pick up the children at their home and return them to same. The parties shall alternate the major holidays of New Year's Day, Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Eve and Christmas. The plaintiff shall have them Mother's Day and the defendant on Father's Day regardless of the scheduled visitation. The parties shall share as equally as possible the children's birthdays. Defendant shall be consulted as to all major decisions of health, education and CT Page 6296 religion for the children but plaintiff shall make the final decisions concerning same.
As long as plaintiff has medical insurance through her employment, she will continue to provide same for the minor children. All unreimbursed medical bills of any nature (including dental, optical, psychological, etc.) shall be equally shared.
C. No alimony shall be paid to either party.
D. The defendant shall pay to the plaintiff the sum of $125.00 per week for each of the minor children as child support until each child attains eighteen (18) years of age, dies, or becomes emancipated.
E. The defendant shall quitclaim his interest in the parties' domicile located at 18 Michaud Road, Danbury, Connecticut to the plaintiff subject to the mortgage and real estate taxes, which she will assume and agree to pay. The plaintiff shall quitclaim her interest in the condominium jointly owned by the parties at 33 Town Hill Avenue (Unit 14, Town Hill Manor) to the defendant subject to the mortgage, common charges and real estate taxes which he will assume and agree to pay. Each party shall hold the other harmless from the liability of the mortgage and taxes on real property he/she retains. This shall include interest, penalties, court costs and reasonable attorney's fees.
F. The parties shall each retain the personal property, both tangible and intangible, already divided and held by him/her. This includes bank accounts, stocks, pension rights and life insurance.
G. Each party shall be responsible for paying the debts shown on his/her respective financial affidavit, except that the defendant shall pay the Danbury Hospital judgment lien in full and the R.N. Nursing School arrearage of $1,200.00, saving plaintiff harmless from and against any financial loss flowing from them.
H. The parties stipulated to the fact that as of January 17, 1992, defendant was $400.00 in arrears in child support. This shall be paid in full to plaintiff by the defendant no later than September 12, 1992
Judgment shall enter in accordance with the foregoing orders.
Patricia A. Geen, Judge CT Page 6297